UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                                              Case No. 04-10004-DHW
                                                                   Chapter 7
MICHAEL MURRY RODGERS,

    Debtor.

JOY RODGERS,

    Plaintiff,

v.                                                                 Adv. Proc. No. 04-01033-DHW

MICHAEL MURRY RODGERS,

    Defendant.

## MEMORANDUM OPINION

Before the court is Joy Rodgers's (hereinafter "Joy") complaint to determine the dischargeability of her claim against Michael Murry Rodgers (hereinafter "Michael").[1] Trial was held in Dothan, Alabama on December 15, 2004. C. Matthew Brunson represented the plaintiff, and Michael D. Brock represented the defendant.

### Jurisdiction

The court's jurisdiction in this adversary proceeding derives from 28 U.S.C. § 1334 and from the United States District Court for this district's general order of reference of title 11 matters to this court. Further, because an action to determine the dischargeability of a particular debt is a core proceeding under 28 U.S.C. § 157(b)(2)(I), this court's jurisdiction extends to the entry of a final judgment.

---

[1] Michael Murry Rodgers filed a petition for relief under chapter 7 on January 5, 2004.

## Findings of Fact

Joy and Michael Rodgers were married on June 1, 1989 and lived together as husband and wife until their separation on January 1, 2002. On that day Joy left the marital residence, and thereafter, filed a complaint for divorce in the Circuit Court of Covington County, Alabama. Michael continued to reside in the couple's home.

On May 3, 2002, the Circuit Court of Covington County, Alabama entered a Final Judgment of Divorce (Plaintiff's Exh. 1). The provisions of the divorce decree that are relevant to this proceeding are summarized as follows:

    1. Michael was to pay Joy $536 each month for the support of their two minor children and to pay one-half of the childrens' uninsured medical expenses;

    2. Joy was to have possession of the marital home until its sale;

    3. The marital home was to be sold. First, Michael was given the right to purchase the residence by paying Joy for her one-half interest. Michael was given 10 weeks from the date of the divorce decree to accomplish the purchase (6 weeks to have the property appraised and four weeks thereafter to close the sale). However, if Michael did not purchase the residence, the property was to be offered for sale through a licensed realtor. If sold, the parties were to equally divide the net proceeds. Finally, if after eight months from the date of the divorce the property had not been sold, either party could request that the house be sold by the clerk of the court with the sales proceeds equally divided between them. Regarding the clerk's sale the divorce decree provides that such sale

> shall vest all interest either party may hold in the above described realty in the purchaser thereof, and with respect to said realty, shall thus serve to convey any reversions, remainders, joint rights, survivorship rights or other rights of the parties hereto over to the buyer.

Further, the decree specifically provided that either Joy or Michael could bid on the property at the clerk's sale;

2

4. Michael was to pay Joy one-half of his tax refund and was to be solely responsible for any fines, penalties or interest associated with any taxes owed;

5. Joy was to have possession of a 1997 Chevrolet Blazer, and Michael was to pay the indebtedness which was secured by that vehicle; and

6. Joy was given a $15,000 judgment against Michael. This sum represented monies paid by Joy toward certain credit card indebtedness.[2]

Following the divorce, although he did not exercise his right under the divorce decree to purchase Joy's interest in the house, Michael continued to reside in the marital home. Michael did not make the payments on Joy's 1997 Chevrolet Blazer as he was obligated to do under the divorce decree, and the car was repossessed. Michael did not make the required child support payments; nor did he pay any money to Joy toward the satisfaction of her $15,000 judgment associated with the credit card indebtedness.

In early 2003, Joy filed a petition for contempt against Michael in the Circuit Court of Covington County, Alabama. On March 17, 2003, the Circuit Court entered an order (Plaintiff's Exh. 2) holding Michael in contempt of court for violating the divorce decree.[3] The Circuit Court found, *inter alia*, that Michael had willfully failed to pay child support, had denied Joy access to the home, had failed to pay the debt secured by Joy's vehicle resulting in the vehicle's repossession, had failed to pay taxes, had failed to pay to Joy half of a tax refund, and had failed to pay Joy's attorney's fees and court costs. The Circuit Court determined that Michael's obligation to Joy under the divorce decree was $29,345.76 and gave Joy a lien against Michael's equity in the home

---

[2] Until just prior to the couple's separation, Joy was unaware that joint credit card balances were in excess of $100,000. Joy had charged less than $15,000 of the overall balances. Michael was able to negotiate with the various credit card lenders to compromise the indebtedness to $55,000. Joy borrowed $15,000 from her mother to pay toward this debt. Michael paid the remaining $40,000 compromised balance.

[3] The Circuit Court's order was amended on April 16, 2003 (Plaintiff's Exh. 3). The amendment, however, merely added the legal description of the marital home.

3

to secure the obligation.[4] Further, the Circuit Court ordered the clerk of court to sell the home.

After advertising the sale for three consecutive weeks in The Andalusia Star News, the clerk of court sold the house to the highest bidder on May 21, 2003. Joy Rodgers was the only bidder and purchased the home for $1,000.00. *See* Plaintiff's Exhs. 4A and 4B. The clerk's sale was ratified and confirmed by the Circuit Court by order dated July 10, 2003.

Michael moved from the house in June 2003 leaving the property in an indescribably horrid condition. Photographs depicting the condition of the house and yard at the time of Michael's departure make up Joy's composite Exhibit 10.[5] The court agrees with Joy's characterization that Michael "trashed" the place before he left. In addition, Michael removed a metal storage building from the property prior to his departure.

In August 2003 Michael found himself again facing contempt of court proceedings in the Circuit Court. He was jailed on August 19, 2003 for failing to pay child support. *See* Plaintiff's Exh. 5.

Finally, on December 10, 2003, the Circuit Court entered a third order relating to Joy's petition to hold Michael in contempt of court. *See* Plaintiff's Exh. 6. The court determined that Michael owed Joy $30,388.73. The total amount consists of the following items:

---

[4] The $29,345.76 obligation was comprised of the following:

$  4,773.61 for child support;
   2,400.00 for rent as a result of Michael's denying Joy access to the home;
  15,000.00 for the judgment associated with the credit card indebtedness;
     804.04 for unpaid joint tax obligations;
     468.11 for tax refund not split with Joy;
   5,000.00 for the value of the vehicle that was repossessed when payments were not made;
     900.00 for Joy's attorney's fees and court costs.

[5] Among other things, the photos depict rodent-infested furnishings, a dead cow on the lawn, bathroom fixtures covered with excrement, and appliances packed with spoiled food.

4

$ 4,616.58 for child support;
15,000.00 for the judgment relating to the credit card debts;
5,000.00 for the repossessed vehicle;
1,272.15 for unpaid taxes and unsplit refunds;
2,400.00 for rent;
900.00 for attorney's fees and costs; and
1,200.00 for the removed metal storage building.

At all prior Circuit Court hearings, Michael had either not appeared or appeared without legal counsel. Michael was, however, represented by an attorney at the hearing that preceded the December 10 order. Further, the December 10 order was a consensual one. The Circuit Court order specifically states that the parties agree that Michael owes Joy the amounts stated therein.

Michael was scheduled to appear before the Circuit Court on January 6, 2004 for another hearing on Joy's petition to have him held in contempt of court. Michael filed his bankruptcy petition on January 5, 2004 the day before the scheduled hearing.

In August 2004 Joy, using a realtor, sold the former marital home for $87,000 and netted $79,000 after deducting the costs of sale. She used $30,000 of these funds to purchase certificates of deposits for her two daughters' future educations. She used approximately $16,000 of the sales proceeds to pay off an encumbrance on her mobile home. She repaid her mother approximately $12,000 that she had borrowed during her divorce difficulties. Joy gave $7,000 of this money to her church as a tithe, and she bought a 2004 Toyota Camry automobile.

Michael is employed as the manager of the Farmers Coop in Opp, Alabama, where he has worked for 17 years. His net earnings from this employment total $1,801.70 each month. *See* Defendant's Exh. 9 and 10. The Farmers Coop job is a full-time, forty-hour per week job.

In years past Michael has done custom farm work and welding for others and by so doing earned extra money. However, he has not done this sort of work for a number of years and no longer has the equipment to allow him to engage in these endeavors.

5

Michael owns a 1/4 interest in a limited liability company with his brothers. While he acknowledges that the company has assets worth about $10,000, he contends that the business is no longer operating and is not a source of additional income. Michael testified that even when the business was operating, he never made money from it.

Michael's average monthly expenses total $1,916 each month. *See* Defendant's Exh. 13. He shares an apartment with his girlfriend, who helps with the monthly expenses.[6] The court is satisfied that the monthly expenses are reasonable, if not bare-boned, noting that child support constitutes $536 of the monthly expenses.

Joy currently works as a nurse at Mizell Memorial Hospital in Opp, Alabama. In the past she has also worked for a private physician. Joy's gross earnings in 2001 were over $30,000. In 2002 she made approximately $28,000. She earned over $29,000 in 2003, and through October 2004, she has earned more than $26,000 this calendar year. In addition to earnings from her employment, Joy should be receiving $536 per month from Michael.[7]

## Contentions of the Parties

Joy contends that her $30,388.73 claim against the defendant is nondischargeable under 11 U.S.C. § 523(a)(5) and (15). Joy asserts that $12,016.58 is nondischargeable under § 523(a)(5)[8] and that the balance of $18,372.15 is nondischargeable under § 523(a)(15).[9]

---

[6] Michael's girlfriend is a part-time beautician whose earnings are meager (less than $100 per week).

[7] As these findings show, however, Michael has been far from diligent in making regular child support payments.

[8] The § 523(a)(5) claim is composed of $4,616.58 for child support arrearage and the childrens' uninsured medical costs, $5,000 for the value of the repossessed vehicle, and $2,400 for rent.

[9] The § 523(a)(15) claim is composed of $15,000 for the credit card related judgment, $1,272.15 for the tax associated matters, $900 for attorney fees, and $1,200 for the removed storage building.

6

Michael first contends that he owes nothing to Joy. According to Michael, the clerk's sale is voidable because the price was below fair market value. Therefore, he was entitled to ½ of the equity ($39,500) when Joy netted $79,000 on the resale of the property. That equity, which Joy kept, is more than his indebtedness to her; hence she has no lawful claim against him.

Second, Michael contends that the claim, excepting child support, is in the nature of a property settlement. Because he lacks the ability to repay this claim, Michael contends that it is dischargeable under § 523(a)(15)(A).

## Conclusions of Law

Debts arising out of a divorce decree and owed to a former spouse are generally nondischargeable in bankruptcy. Such debts fall into one of two categories. Those that are in the nature of alimony for the maintenance and support of the former spouse or dependent child and which have not been assigned to a third party are nondischargeable without exception. The second category, those that are in the nature of a property division, are also nondischargeable, but two exceptions apply. First, if the debtor lacks the ability to repay the debt, the debt is dischargeable. Secondly, if the debtor can repay the debt, it may nevertheless be dischargeable if the equities favor the debtor.[10]

---

[10] The exact text of the statute provides:

(a) A discharge under section 727, 1141, 1228(a), 1328(b) of this title does not discharge an individual debtor from any debt— . . .
  (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—
    (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 408(a)(3) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or
    (B) such debt includes a liability designated as alimony, maintenance or support unless such liability is actually in the

7

Michael first contends that he owes no debt to Joy because she kept his portion of the equity from the $79,000 sale. Michael contends that he is entitled to one-half of the equity because the clerk's sale was invalid.[11]

However, the argument constitutes a collateral attack on the state court order confirming the clerk's sale. Michael declined to exercise his right to purchase Joy's interest in the property, declined to sell the property through a realtor, declined to bid on the property at the clerk's sale, declined to object to the clerk's report of sale, and declined to appeal the order confirming the sale. Michael cannot now set aside the state court order in this court. *See Powell v. Powell*, 80 F.3d 464 (11th Cir. 1996).

The Supreme Court of Alabama has refused to disturb a sale consummated and ratified by a lower court where the objection raised on appeal was not first asserted to the lower court. *See Steele v. Bibb*, 519 So.2d 1334 (Ala. 1988) (appellant asserted that the lower court confirmed the sale without giving him adequate notice and opportunity to present evidence that the sale prices of the two lots were below fair market value). In the case at bar, Michael neither

---

        nature of alimony, maintenance, or support.
. . .

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—
    (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
    (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

[11] Michael cites to cases supporting his argument that a sale may be set aside if the purchase price shocks the conscience of the court. However, the issue is not whether Michael could have set the sale aside in state court had he acted in a timely fashion utilizing the proper state court procedures.

8

objected to the clerk's report of sale nor appealed the order confirming the sale.

In addition, Michael has not asserted any grounds under the Bankruptcy Code which would allow Michael to set aside the order confirming the sale.

Michael secondly contends that he is unable to repay the $18,372.15 portion of the indebtedness representing the division of property. The court agrees. Michael's average monthly expenses exceed his average monthly income. Subtracting the monthly $536 child support expense, Michael's monthly expenses total only $1,380. The court finds that this amount is reasonably necessary for his own maintenance and support. Even if Michael were able to squeeze $100 per month from his already dry finances, it would take him over 15 years to repay the amount owed. The court concludes that Michael does not have the ability to repay the property settlement obligation, and the obligation is dischargeable under 11 U.S.C. § 523(a)(15)(A).

However, the obligation for past due support is not dischargeable under 11 U.S.C. § 523(a)(5). Joy classifies the following components of the state court judgment as support: $4,616.58 for child support arrearage and the childrens' uninsured medical costs, $5,000 for the value of the repossessed vehicle, and $2,400 for rent. The court agrees.

All three components are actually in the "nature of support." *See* 11 U.S.C. § 523(a)(5). The rent cost was incurred by Joy because Michael excluded her from rightful possession of the former marital residence. Because Michael failed to make the payments on the 1997 Chevrolet Blazer, the vehicle was repossessed, depriving Joy of rightful transportation. The child support arrearage and medical claims are clearly in the nature of support. Therefore, the debt for these three items is not dischargeable.

An order conforming to this memorandum opinion will enter separately.

Done this 25 day of January, 2005.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge

c: Charles Matthew Brunson, Attorney for Plaintiff
   Michael D. Brock, Attorney for Defendant/Debtor